IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASSOCIATION OF IRRITATED RESIDENTS, an Unincorporated Association,<br><br>            Plaintiff,<br><br>     v.<br><br>C&R VANDERHAM DAIRY, a California Proprietorship, and RICK and CORRIE VANDERHAM, owners and operators,<br><br>            Defendants. | CIV F 05-1593 AWI SMS<br><br>ORDER ON DEFENDANTS'S MOTION TO DISMISS |

This is a Clean Air Act ("CAA") case brought by Plaintiff Association of Irritated Residents ("AIR") against Defendants C&R Vanderham Dairy, and Rick and Corrie Vanderham (collectively "Vanderham").  AIR alleges that Vanderham violated California's State Implementation Plan by constructing a stationary source that may emit pollutants without obtaining an Authority to Construct ("ATC") permit from the San Joaquin Valley Unified Air Pollution Control District ("the District") and without the attendant pollution limitations required by the implementation plan.  Vanderham has filed a Rule 12(b)(1) Motion to Dismiss.  For the reasons that follow, the motion will be denied.

**FACTUAL BACKGROUND**

From the complaint, on August 24, 2004, Vanderham obtained a conditional use permit for a diary from Kern County. The use permit limited the herd to 1,456 milk cows and 1,408 "support stock" (non-lactating or dry cows, heifers, and calves). On July 29, 2005, Vanderham obtained building permits for a milk barn, two freestall barns, and two hay barns at the dairy site. Vanderham began construction on or after July 29, 2005. Vanderham has begun to construct the Dairy to achieve maximum operational capacity and has constructed or is in the process of constructing, two freestall barns, two solid separation lagoons, two liquid manure storage lagoons, all planned corrals with flushed lanes, a milking barn, and feed storage facilities; these facilities compromise the dairy facility and will occupy 60 acres.

Dairy cows emit volatile organic compounds ("VOC") directly from their bodies's digestive system, which are referred to as enteric emissions. VOC is emitted from urine and feces ("manure") from dairy cows immediately after excretion in the freestall barns, from decomposing manure in the solid separation lagoons and liquid manure storage lagoons, in corrals, and in solid manure composting piles. Of the various compounds defined as VOC under District rules, dairy cows emit many defined VOCs, and decomposing feed also emits VOC. The enteric emissions from cows in the freestall barns and the milking barn, emissions from decomposing feed, and emissions from decomposing manure in the manure lagoons and compost piles are non-fugitive emissions in that they can reasonably pass through a stack, chimney, vent or other functionally equivalent opening. The freestall barns and milking barn, the liquid manure storage lagoons, the solid manure storage piles, and the feed storage unit each have the potential to emit VOC at a rate greater than 2 lbs. per day and 10 tons per year.

On December 15, 2005, AIR filed its Complaint and alleged a cause of action under citizen suit provision 42 U.S.C. § 7604(a)(1) of the CAA.[1] AIR alleges that Vanderham has

---

[1] 42 U.S.C. § 7604(a)(1) and (3) in relevant part read:

Except as provided in subsection (b), any person may commence a civil action on his own behalf--
(1) against any person (including (I) the United States, and (ii) any other governmental instrumentality or agency to

violated District Rules 2010 and 2201, which have been approved by the EPA as part of California's State Implementation Plan.  AIR alleges that Vanderham has failed to obtain an ATC permit from the District, has not installed Best Available Control Technology, and has not purchased emission reduction credits.  AIR seeks declaratory and injunctive relief, the imposition of civil fines, and attorney's fees.  On February 14, 2006, Vanderham filed this Rule 12(b)(1) motion and argues that this Court does not have subject matter jurisdiction because AIR did not exhaust administrative remedies.

      Vanderham has submitted a series of correspondences between itself/its attorneys and the District.  See Albers Declaration Exhibits C, D, E, F.  Additionally, Vanderham has filed a request for judicial notice, to which there is no objection, of a December 2005 letter it received from the District, specifically from Samir Shelkh, Permit Service Manager.  Vanderham's exhibits in pertinent part indicate:

1. On July 15, 2005, Vanderham through its attorney represented to the District that it was developing a dairy project that will be built for 1320 milk cows, 195 heifers, 486 heifers over 15 months, 378 heifers aged 7 to 14 months, 162 heifers 4 to 6 months, and 120 calves.  Using a downloaded worksheet from the District, the dairy would produce 12.4 tons per year of VOC and would be exempt from permitting requirements.  Vanderham indicates that the dairy is under construction, is concerned over a rule change during the construction process, and requests a letter from the District that states the dairy is exempt from permitting requirements.  See Albers Declaration Exhibit C.

2. On October 27, 2005, Vanderham informed the District that the cow population detailed

---

the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this Act or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, . . . . . . .

(3) against any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under part C of title I (relating to significant deterioration of air quality) or part D of title I (relating to nonattainment) or who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of any condition of such permit.

|     |     |     |
| --- | --- | --- |
| 1   |     | in the July 15, 2005, letter is based on the current emission factor of 19.3 pounds, that the |
| 2   |     | dairy is under construction, and that Defendants will take steps such as installing |
| 3   |     | stanchions, loops, etc. so as to construct the dairy for the cattle population listed in the |
| 4   |     | letter rather than for the greater population approved by Kern County.  Additionally, |
| 5   |     | Vanderham states that portions of the freestall barns and corrals will be cordoned off with |
| 6   |     | fencing and/or locked gates to create physical limitations in housing for the cattle |
| 7   |     | population.  See Albers Declaration Exhibit D. |
| 8   | 3.  | Exhibit E is a letter dated November 3, 2005, from Vander Weerd Construction to the |
| 9   |     | District.  The letter attaches a timeline concerning applications for, and issuances of, |
| 10  |     | building permits and dates construction commenced.  The timeline does not indicate |
| 11  |     | whether construction has been completed as to any of the dairy's structures.  See Albers |
| 12  |     | Declaration Exhibit E. |
| 13  | 4.  | On December 8, 2005, Vanderham's attorney sent a letter to the District regarding the |
| 14  |     | October 27, 2005, letter.  Vanderham's counsel indicates that he spoke with a District |
| 15  |     | representative and that this letter is meant as a clarification.  Vanderham's counsel states |
| 16  |     | that, since locked gates could be unlocked, the Vanderhams have agreed to construct |
| 17  |     | permanent barriers, meaning fencing will be welded to limit the dairy herd size to the |
| 18  |     | cattle population specifically listed for the various age groups referenced in the October |
| 19  |     | 27, 2005 [and July 15, 2005], letter.  See Albers Declaration Exhibit F. |
| 20  | 5.  | In December 2005, the District sent a letter to Vanderham.  The letter indicates that it is |
| 21  |     | "Re: Permits to Operate."  The letter reads: |

Based on all the information provided to the District regarding your construction activities, the determination was made that your dairy commenced construction prior to the date that the District started requiring Authority to Construct (ATC) permits.  Your dairy is therefore considered an existing operation and no ATC is required.

However, since the emissions from your dairy exceed the new permitting levels, a Permit to Operate is required for your dairy.  Pursuant to District Rule 2010, Section 4.3, when an application for a Permit to Operate is filed for an existing operation, the application serves as a temporary Permit to Operate.  Therefore,

4

since a permit application for your dairy operation was received on October 31, 2005, your application acts as a legal Permit to Operate until you have received your final Permit to Operate from the District.

Please notify the District Compliance Division at . . . when construction is completed so that your dairy can be inspected.

Thank you for your cooperation in this matter. . . .

Exhibit 1 Vanderham's Request for Judicial Notice.[2]

# DEFENDANT'S MOTION

*Defendant's Argument*

Vanderham argues that following administrative remedies gives an agency the opportunity to correct errors, establish a record, and affords the parties the benefit of expertise and that the failure to so exhaust is a fatal jurisdictional defect. The CAA requires federal approval of SIP's to implement that act's standards, but "the prevention and control of air pollution at its source is the primary responsibility of States and local governments." 42 U.S.C. § 7401(3). Before proceeding under citizen suit provision § 7604(1), a plaintiff "must exhaust its administrative and judicial remedies before proceeding." See Action for Rational Transit v. West Side Highway Project by Bridwell, 699 F.2d 614, 616-17 (2d Cir. 1983) ("Rational Transit"). In *Rational Transit*, plaintiffs challenged the state air pollution authority's determination that a transit project would not violate the New York SIP. Id. at 616. Plaintiffs did not challenge this finding through New York state law. Id. The Court of Appeals held dismissal was appropriate because the decision of the state agency was final and represented the end product of an administrative process entrusted by Congress to state officials. Id.

Here, the District was established by the California legislature in the California Health & Safety Code. The Health & Safety Code grants the District powers to adopt orders, regulations, rules, and permitting authority. Under Health & Safety Code § 42310.16(c), the District may not

---

[2]The exact date of the letter is unclear. The date reads, "DEC 1% 2005" and the "005" is stamped instead of typed. Given the layout of a typical keyboard, the Court believes that the date is likely December 15, 2005.

5

require, for any agricultural source whose actual emissions are less than half the applicable thresholds unless specific findings in a public hearing are made. The applicable threshold is 25 tons per year of non-fugitive VOC, which means agricultural sources are exempt from permitting requirement if their actual annual emissions do not exceed 12.5 tons of VOC per year. Vanderham has submitted certain information to the District as to the makeup of the herd. See Albers Declaration Exhibits C, D, & E. The information indicates that the herd is under the 12.5 ton limit and Vanderham made assurances to keep the herd size below the permitting threshold. Id. at Exhibit F. The District reviewed the information and determined that the dairy would be below the permitting threshold and thus, made the determination that the dairy would emit less than the percentage of VOC per year than that of a major source within the District. This determination was made in December 2005, prior to the filing of the instant action. Subsequent to the district's determination, AIR has not pursued administrative remedies in an attempt to correct the administrative action taken.

However, Regulation 5 of the District provides the procedural mechanisms to challenge the actions of the District. See id. at Exhibit A. Further, AIR has failed to seek redress in state court, which is required by state law. California Code of Civil Procedure §§ 1094.5, 1094.6 provide for mandamus proceedings to inquire into the validity of administrative actions and is the exclusive remedy for challenging final decisions by the District. See Cal. Health & Safety Code § 40864. AIR has not taken any steps to seek redress administratively: there is no evidence that AIR followed Regulation 5 nor is there evidence that plaintiffs have sought redress in state court. Just as in *Rational Transit*, this case must be dismissed for lack of subject matter jurisdiction because AIR has failed to exhaust administrative remedies.

Vanderham argues in the conclusion section that AIR has attacked the wrong parties since it was the District who determined that no permit was required. Vanderham argues that AIR should take the matter up with the permitting authority either administratively or in state court.

*Plaintiff's Opposition*

AIR argues that the CAA's citizen suit provision does not require that administrative remedies be exhausted and Vanderham has pointed to no express provision of the CAA that so requires. The act actually requires the court to exercise jurisdiction as it states that "any person may commence a civil action on his own behalf" against "any person" alleged to be in violation of an "emission standard or limitation," and that District Courts "shall have jurisdiction." See 42 U.S.C. § 7604(a). The only exception under the CAA for citizen suits is that a citizen must give a 60-day notice of intent to sue to the defendant, the Administrator, and the relevant state authority. See 42 U.S.C. § 7604(b). Also, the federally approved SIP in this case does not require exhaustion of administrative remedies and District Regulation 5 has not been approved as part of the SIP and is therefore inapplicable. Further, the Ninth Circuit has held that unless expressly required by a statute, exhaustion is not jurisdictional. Although judicially created exhaustion may be appropriate in some cases, judicially created exhaustion does not limit jurisdiction. Also, Congress expressly made available the remedy of a citizen suit in district court as long as AIR meets the CAA's requirements; the doctrine of exhaustion cannot trump this remedy just because a second remedy is available under a different statutory or regulatory scheme. Because neither the CAA nor the SIP require exhaustion of remedies, exhaustion of such remedies is not a jurisdictional requirement.

As for *Rational Transit*, that case is contrary to Ninth Circuit law regarding exhaustion of legal remedies and the cited aspect of the *Rational Transit* opinion is dicta as the holding was that the plaintiffs had failed to allege a violation of a specific commitment in the SIP. Also, *Rational Transit* relied on a Ninth Circuit case where subject matter jurisdiction was first determined and that involved a SIP that required the pursuit of administrative remedies. Finally, unlike the plaintiffs in *Rational Transit*, AIR had no way of knowing about the District's letter to Vanderham and did not learn of the District's letter until February 1, 2006.

Also, the state remedies identified by Vanderham do not apply in this case. Regulation 5

states that it applies only to "all hearings before the Hearing Board of the District." Albers Declaration Exhibit A at Rule 5010 § 2.0.  Further, the California Health and Safety Code section cited concerns only judicial review of a decision of a hearing board." Cal. Health & Safety Code § 40864(a).  Here, there was no hearing board determination or public process, rather, there was an informal letter sent to Vanderham.  Moreover, a decision that Vanderham does not need to obtain a permit falls outside the scope of hearing board review.  There is no mechanism to appeal a District decision that a permit is not required, and participants in actions before the District are not required to request that the hearing board hold a hearing.

Finally, AIR argues in response to the Conclusion in Vanderham's motion that the CAA vests the Court with subject matter jurisdiction against a pollution source alleged to be in violation of a CAA permit even when the plaintiff could have sued the agency under a separate provision.  Section 7604(a) authorizes suits by "any person" against "any person . . . alleged to be violation . . . of an emission standard."

## LEGAL STANDARDS

**1.      F.R.C.P. 12(b)(1)**

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows for a motion to dismiss based on lack of subject matter jurisdiction.  See Fed. R. Civ. Pro. 12(b)(1).  It is a fundamental precept that federal courts are courts of limited jurisdiction.  Limits upon federal jurisdiction must not be disregarded or evaded.  Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978).  A Rule 12(b)(1) motion may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court is permitted to look beyond the complaint to extrinsic evidence.  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004); Savage v. Glendale Union High School Dist. No. 205, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).  The plaintiff has the burden to establish that subject matter jurisdiction is proper.  Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994); In re Ford Motor Co., 264 F.3d 952, 957 (9th

Cir. 2001). This burden, at the pleading stage, must be met by pleading sufficient allegations to show a proper basis for the court to assert subject matter jurisdiction over the action. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Fed. R. Civ. P. 8(a)(1). The pleading must show "affirmatively and distinctly the existence of whatever is essential to federal jurisdiction, and if [it] does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." Tosco Corp. v. Communities For A Better Env't, 236 F.3d 495, 499 (9th Cir. 2001).

When a defendant challenges jurisdiction "facially," all material allegations in the complaint are assumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading itself. See Wolf, 392 F.3d at 362; Miranda v. Reno, 238 F.3d 1156, 1157 n.1 (9th Cir. 2000); Thornhill Publishing Co. v. General Telephone Electronics, 594 F.2d 730, 733 (9th Cir. 1979); Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F. 2d 884, 891 (3d Cir.1977). When a defendant makes a factual challenge "by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Safe Air For Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004); Savage, 343 F.3d at 1039 n.2. The court need not presume the truthfulness of the plaintiff's allegations under a factual attack. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

### 2.   REGULATORY FRAMEWORK

*The Clean Air Act In General*

Congress passed the CAA to protect and to enhance the quality of air resources and to promote the health, welfare, and productive capacity of the nation. 42 U.S.C. § 7401; California v. United States, 215 F.3d 1005, 1007 (9th Cir. 2000). The CAA creates a framework for the "development of cooperative Federal, State, regional, and local programs to prevent and control air pollution." 42 U.S.C. § 7401(a)(4); Hall v. United States Environmental Protection Agency,

273 F.3d 1146, 1153 (9th Cir. 2001). The CAA requires that the EPA publish a list of air pollutants and promulgate health based standards, known as the National Ambient Air Quality Standards ("NAAQS"), that set the maximum permissible concentrations in the ambient air for each listed air pollutant. 42 U.S.C. §§ 7408(a), 7409(a); Vigil v. Leavitt, 366 F.3d 1025, 1029 (9th Cir. 2004); Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n, 366 F.3d 692, 695 (9th Cir. 2004). Each state has primary responsibility for assuring air quality, and the CAA requires each state to adopt a State Implementation Plan ("SIP") in order to meet NAAQS requirements. 42 U.S.C. §§ 7407(a), 7410(a); Vigil, 366 F.3d at 1029; Bayview Hunters Point, 366 F.3d at 695; Hall, 273 F.3d at 1153. Specifically, each state is required "to adopt a 'plan which provides for implementation, maintenance, and enforcement' of the ambient air quality standards and to submit its SIP to the EPA for approval. Each SIP must include enforceable emission limitations and other control measures necessary to attain the NAAQS, as well as timetables for compliance." 42 U.S.C. § 7410(a)(2)(A); Bayview Hunters Point, 366 F.3d at 695; see also Vigil, 366 F.3d at 1029. In order to provide for federal oversight of state efforts to meet NAAQS requirements, "SIPs are subject to EPA review and, if inadequate, disapproval." Hall, 273 F.3d at 1153; see Bayview Hunters Point, 366 F.3d at 695.   Once a SIP is "adopted by a state and approved by the EPA, [it] becomes controlling and must be carried out by the state." Bayview Hunters Point, 366 F.3d at 695; Beentjes v. Placer County Air Pollution Control Dist., 254 F.Supp.2d 1159, 1162 (E.D. Cal. 2003) ("[a SIP's] requirements and commitments become binding upon the state as a matter of federal law."). "Approved SIPs are enforceable by either the State, the EPA, or via citizen suits brought under [42 U.S.C. § 7604(a)]." Bayview Hunters Point, 366 F.3d at 695. Regions within a state are "designated as either 'attainment' or 'non-attainment' areas, depending upon whether they meet the NAAQS for a particular pollutant." Council of Sacramento v. Slater, 184 F.Supp.2d 1016, 1019 (E.D. Cal. 2000). The CAA requires that each SIP include a permit program for non-attainment areas to regulate the construction and operation of proposed new or modified major stationary sources of

10

pollutants. 42 U.S.C. § 7502(c)(5); Greenbaum v. EPA, 370 F.3d 527, 531 (6th Cir. 2004). This permitting program is known as New Source Review ("NSR"). Greenbaum, 370 F.3d at 531.

*Citizen Suits Under The CAA*

Private individuals may bring a "citizen suit" to enforce provisions of the CAA and approved SIP's. See 42 U.S.C. § 7604; Bayview Hunters Point, 366 F.3d at 695; Communities for a Better Environment v. Cenco Ref. Co., 180 F.Supp.2d 1062 (C.D. Cal. 2001). The CAA expressly authorizes citizens' suits in federal court. See Oregon Environmental Council v. Oregon Dept. of Environmental Quality, 775 F.Supp. 353, 364 (D. Or. 1991). The CAA in pertinent part reads:

> (a) Authority to bring civil action; jurisdiction. Except as provided in subsection (b), any person may commence a civil action on his own behalf--
> (1) against any person (including (I) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an *emission standard or limitation*[3] under this Act or (B) an order issued by the Administrator or a State with respect to such a standard or limitation,
>
> (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this Act which is not discretionary with the

---

[3]An "emission standard or limitation" under 42 U.S.C. § 7604 is:

(1) a schedule or timetable of compliance, emission limitation, standard of performance or emission standard,
(2) a control or prohibition respecting a motor vehicle fuel or fuel additive, [or]
(3) any condition or requirement of a permit under part C of title I [42 USCS §§ 7470 et seq.] (relating to significant deterioration of air quality) or part D of title I [42 USCS §§ 7501 et seq.] (relating to nonattainment),[,] section 119 [42 USCS § 7419] (relating to primary nonferrous smelter orders), any condition or requirement under an applicable implementation plan relating to transportation control measures, air quality maintenance plans, vehicle inspection and maintenance programs or vapor recovery requirements, section 211(e) and (f) [42 USCS § 7545(e), (f)] (relating to fuels and fuel additives), section 169A [42 USCS § 7491] (relating to visibility protection), any condition or requirement under Title VI [42 USCS §§ 7671 et seq.] (relating to ozone protection), or any requirement under section 111 or 112 [42 USCS §§ 7411, 7412] (without regard to whether such requirement is expressed as an emission standard or otherwise);[,] or
(4) any other standard, limitation, or schedule established under any permit issued pursuant to title V [42 USCS §§ 7661 et seq.] or under any applicable State implementation plan approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations.[,] which is in effect under this Act (including a requirement applicable by reason of section 118 [42 USCS § 7418]) or under an applicable implementation plan.

42 U.S.C. § 7604(f).

11

> Administrator, or
>
> (3) against any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under part C of title I [42 USCS §§ 7470 et seq.] (relating to significant deterioration of air quality) or part D of title I [42 USCS §§ 7501 et seq.] (relating to nonattainment) or who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of any condition of such permit.
>
> The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an emission standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties. . . .
>
> (b) Notice. No action may be commenced--
> (1) under subsection (a)(1)--
> (A) prior to 60 days after the plaintiff has given notice of the violation (I) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard, limitation, or order . . . .

42 USCS § 7604(a), (b)(1).

The CAA's provision for citizen suits "is meant to supplement rather than to supplant government action." Sierra Club v. Georgia Power Co., 443 F.3d 1346, 1349 (11th Cir. 2006). For citizen suits brought under § 7604(a)(1), citizen plaintiffs must give sixty (60) days notice as a mandatory condition precedent or else face dismissal of their claim. See Hallstrom v. Tillamook County, 493 U.S. 20, 31 (1989) (interpreting analogous notice requirements under RCRA); Save Our Health Org. v. Recomp of Minn., Inc., 37 F.3d 1334, 1337-38 (8th Cir. 1994); Village of Oconomowoc Lake v. Dayton Hudson Corp., 24 F.3d 962, 963 (7th Cir. 1994); Anderson v. Farmland Indus., 45 F.Supp.2d 863, 865 (D. Kan. 1999). "The purposes of the notice requirement are to: (a) allow the alleged violator to come into compliance with the law; (b) provide an opportunity to negotiate a settlement of the dispute short of a lawsuit; and (c) give state and federal environmental agencies an opportunity to step in and enforce their laws and regulations." Cenco Ref. Co., 180 F.Supp.2d at 1086 (citing Hallstrom v. Tillamook County, 493 U.S. 20 (1989)).

### 3.    EXHAUSTION OF REMEDIES

Under the doctrine of exhaustion, "no one is entitled to judicial relief for a supposed or

threatened injury until the prescribed . . . remedy has been exhausted." McKart v. United States, 395 U.S. 185, 193 (1969); Laing v. Ashcroft, 370 F.3d 994, 997 (9th Cir. 2004). "Where Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs." McCarthy v. Madigan, 503 U.S. 140, 144 (1992); Pension Benefit Guar. Corp. v. Carter & Tillery Enters., 133 F.3d 1183, 1187 (9th Cir. 1998). Thus, exhaustion "can be either statutorily or judicially required," and, if statutorily required, "may be mandatory and jurisdictional." Laing, 370 F.3d at 998. Where exhaustion of administrative remedies is not required by a statute, a district court may exercise it discretion to require exhaustion. Porter v. Board of Trs. of Manahattan Beach Unified Sch. Dist., 307 F.3d 1064, 1070 (9th Cir. 2002); Tomas v. Rubin, 926 F.2d 906, 911 (9th Cir. 1991); Morrison-Knudsen Co. v. CHG Int'l, Inc., 811 F.2d 1209, 1223 (9th Cir. 1987). "In exercising its discretion, the court must balance the agency's interest in applying its expertise, correcting its own errors, making a proper record, and maintaining an efficient, independent administrative system, against the interests of private parties in finding adequate redress." Tomas, 926 F.2d at 911-12; Morrison-Knudsen, 811 F.2d at 1223. A court's discretionarily imposed exhaustion requirement, however, "does not limit jurisdiction." Morrison-Knudsen, 811 F.2d at 1223. Rather, where a district court exercises its discretion to require exhaustion, the court "may allow the action to proceed immediately, it may dismiss the action pending exhaustion of administrative remedies, or it may stay its own proceedings pending administrative review. In most cases, particularly where a statute of limitations problem might develop, the third alternative may represent the best accommodation of the competing interests." Pension Benefit, 133 F.3d at 1187; Morrison-Knudsen, 811 F.2d at 1223. "Resort to administrative remedies is not required where the administrative remedy is inadequate, or where proceeding within the administrative process would be futile or serve no purpose." American Federation of Government Employees, Local 1168 v. Dunn, 561 F.3d 1310, 1314-15 (9th Cir. 1977).

**DISCUSSION**

Vanderham's Rule 12(b)(1) motion to dismiss is based on an alleged failure by AIR to exhaust administrative remedies. However, the Court finds AIR's arguments on the issue of subject matter jurisdiction persuasive.

An exhaustion requirement is either mandated by statute or judicially imposed. Laing, 370 F.3d at 998. With respect to a statutory mandate, the text of § 7604 does not contain an express exhaustion of state remedies requirement. Cf. Citizens for a Better Env't v. Union Oil Co., 83 F.3d 1111, 1119 (9th Cir. 1996) ("Furthermore, 33 U.S.C. § 1365 makes no mention of exhaustion of state remedies as a prerequisite for bringing a citizen suit."). In fact, § 7604(a) states that "district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an emission standard or limitation." 42 U.S.C. § 7604(a). Thus, there is an express grant of jurisdiction to this Court to enforce an "emission standard or limitation." The CAA does require 60-days notice before a plaintiff can file a suit seeking to enforce an emission standard. However, Vanderham does not challenge the 60-day notice requirement, and there is no indication that AIR has failed to fulfill the 60-day notice requirement for filing a § 7604(a)(1) suit.[4] Vanderham focuses on state statutory provisions for challenging decisions of a hearing board. However, this lawsuit is based on a provision of federal law, the CAA. Under the federal provision under which AIR brings suit, 42 U.S.C. § 7604, there is no evidence that AIR has failed to fulfill the requirements imposed by that statute. Vanderham has not shown that any mandatory provisions of the CAA have been violated such that dismissal would be appropriate or that exhaustion is mandated by § 7604, other than perhaps the 60-day notice requirement.

In the absence of an express requirement for exhaustion of state remedies in § 7604, the Court may exercise its discretion and require exhaustion. However, in its reply, Vanderham

---

[4] The complaint alleges that "On September 20, 2005, AIR sent a 60-day notice of intent to sue Vanderham to enforce the [SIP] pursuant to § 304(a)(1) of the [CAA], 42 U.S.C. § 7604(a)(1)."

14

maintains that the Court lacks jurisdiction and states that the "issues in this case focus on statutory exhaustion, not the doctrine of judicial exhaustion." Vanderham's Reply at 8:23-24. Thus, it appears that Vanderham is not requesting the Court to impose a judicially created exhaustion requirement. Moreover, Vanderham has not addressed arguments made by AIR against a judicially imposed exhaustion requirement. Specifically, Vanderham has not addressed arguments that: (1) the 60-day notice requirement in § 7604 serves similar functions as an exhaustion requirement, see Cenco Ref.,180 F.Supp.2d at 1086; (2) other courts within this circuit have refused to require exhaustion of state judicial or administrative remedies prior to filing a citizen suit, see Cenco Ref. Co., 180 F.Supp.2d at 1087 n.10; Oregon Environmental Council, 775 F. Supp. at 364; and (3) it is unclear how or whether Regulation 5 and/or the Health & Safety Code could apply in the circumstances of this case, i.e. a decision that no permit is required and the decision is not made by the District Hearing Board after a hearing. Accordingly, because it does not appear that Vandheram is requesting a judicial exhaustion requirement, and because Vanderham has not adequately explained the basis for imposing a discretionary exhaustion requirement, the Court will not impose a discretionary, judicial exhaustion requirement.

With respect to *Rational Transit*, the Court finds this case to be distinguishable from the case at bar. *Rational Transit* relied primarily on *League to Save Lake Tahoe, Inc. v. Trounday*, 598 F.2d 1164 (9th Cir. 1979) for the proposition that state judicial and administrative remedies must be exhausted prior to bringing a § 7604(a)(1) suit. However, in *Trounday*, the Ninth Circuit was dealing with a federally approved SIP that had incorporated state administrative remedies/procedures. Id. at 1168, 1174 & n.12; Cenco Ref., 180 F.Supp.2d at 1086. The *Trounday* plaintiffs's failure to pursue the administrative remedies as provided by the federally approved SIP did not entitle them to a remedy in federal court. Trounday, 598 F.2d at 1174; Cenco Ref., 180 F.Supp.2d at 1086-87. Here, Vanderham has failed to point to an exhaustion requirement or administrative remedies/procedures similar to *Trounday* within the federally approved SIP.

15

Also, in *Rational Transit*, the plaintiffs "knew that their interests were at stake in the indirect source proceedings," but failed to participate in or pursue the administrative process regarding issuance of a permit. Rational Transit, 699 F.2d at 616-17. *Rational Transit* does not explain what kind of proceedings occurred in the determination that no permit was necessary, but the plaintiffs in that case knew that proceedings were occurring and that their interests were involved. See id. at 617. In the case at bar, the determination that no permit was required for Vanderham does not appear to have involved any open proceedings, but instead was done through private correspondences.[5] It is unknown how AIR could be expected to know that its interests were at stake.

*Vanderham's Argument Made In Reply*

In its reply brief, Vanderham mostly expands on the argument that AIR is attacking the wrong party. As explained above, in the Conclusion section of its motion, Vanderham stated in summary that AIR is attacking the wrong party because it was the District that determined that Vanderham needs no ATC permit. The reply brief significantly expands on this argument and argues, in part, that AIR prays for an injunction from this Court to require Vanderham to obtain a permit. Vanderham argues that since the District has already determined that no permit is required, and since the District is not a party to this lawsuit, the Court cannot grant this relief. In its prior opposition, AIR states in one paragraph that it is challenging Vanderham's violation of law, is not challenging the District's decision, and that § 7604(a)(1) does not require it to sue the state agency.

The issue of attacking the wrong party was inadequately developed in the initial motion as the issue simply purported to be a summary in the conclusion section of Vanderham's Rule 12(b)(1) motion. Vanderham's reply brief expands on this argument, but raises issues that were not briefed in its 12(b)(1) motion or addressed by AIR in the prior opposition. It is inappropriate to consider arguments raised for the first time in a reply brief. See Eiden v. Thrifty Payless, Inc.,

---

[5]The Court does not suggest that there was anything improper or nefarious about the correspondences between Vanderham and the District or the District's determination that no ATC permit was required.

407 F.Supp.2d 1165, 1171 n.7 (E.D. Cal. 2005).  Additionally, the arguments raised by Vanderham in its reply appear to be better suited for a motion other than a Rule 12(b)(1) motion since any problems with relief available or parties may require dismissal, but do not deprive the Court of subject matter jurisdiction at this point.  See Fed. Rs. Civ. Pro. 12, 19.  Accordingly, the Court will not address these issues at this time.  See Edien, 407 F.Supp.2d at 1171 n.7.

## CONCLUSION

Vanderham has moved the Court to dismiss this case under Rule 12(b)(1) and argues that this Court lacks subject matter jurisdiction because AIR did not exhaust state administrative and judicial remedies.  An exhaustion of remedies claim is either mandated by a statute or judicially imposed as an exercise of discretion.  Judicially imposed exhaustion requirements do not limit a court's jurisdiction.  Here, Vanderham has not shown, and apparently does not argue, that a discretionary exhaustion requirement should apply, but instead maintains that this Court lacks subject matter jurisdiction.  The citizen suit provision of the CAA does not contain an exhaustion of state remedies requirement.  Moreover, the CAA specifically grants district courts jurisdiction to hear suits that seek to enforce an emission standard or limitation.  The only pre-requisite apparent under the CAA's citizen suit provision is a 60-day notice requirement.  Courts do dismiss CAA citizen suits where a plaintiff fails to serve the mandatory 60-day notice.  However, there has been no issue raised with respect to the 60-day notice in this case.  Given the language of the citizen suit provision of the CAA, specifically the absence of an exhaustion requirement and the express grant of jurisdiction to district courts, the Court concludes that it has subject matter jurisdiction in this case.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants's Rule 12(b)(1) Motion To Dismiss is DENIED; and
2. Defendants shall file an answer or other appropriate responsive pleading within twenty-one (21) days of service of this order.

1  IT IS SO ORDERED.

2  **Dated:    June 15, 2006**                              **/s/ Anthony W. Ishii**
   0m8i78                                                   UNITED STATES DISTRICT JUDGE