1
2
3
4
5
6
7
8

### IN THE UNITED STATES DISTRICT COURT FOR THE

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ASSOCIATION OF IRRITATED RESIDENTS, an Unincorporated Association,** ) ) ) | **CIV F 05-1593 AWI SMS** |
| **Plaintiff,** ) ) | **ORDER ON DEFENDANTS' MOTION TO DISMISS** |
| **v.** ) ) | |
| **C&R VANDERHAM DAIRY, a California Proprietorship, and RICK and CORRIE VANDERHAM, owners and operators,** ) ) ) ) ) | |
| **Defendants.** ) ) | |
| _____ ) | |

        This is a Clean Air Act ("CAA") case brought by Plaintiff Association of Irritated Residents ("AIR") against Defendants C&R Vanderham Dairy, and Rick and Corrie Vanderham (collectively "Vanderham").  AIR alleges that Vanderham violated California's State Implementation Plan by constructing a stationary source that may emit pollutants without obtaining an Authority to Construct ("ATC") permit from the San Joaquin Valley Unified Air Pollution Control District ("the District") and without obtaining offset credits or installing best available control technology ("BACT").  This Court previously denied a Rule 12(b)(1) by Vanderham.  Now, Vanderham has filed a Rule 12(b)(6) Motion to Dismiss.  For the reasons that follow, the motion will be denied.

**FACTUAL BACKGROUND**

From the complaint, on August 24, 2004, Vanderham obtained a conditional use permit for a dairy from Kern County.  The use permit limited the herd to 1,456 milk cows and 1,408 "support stock" (non-lactating or dry cows, heifers, and calves).  On July 29, 2005, Vanderham obtained building permits for a milk barn, two freestall barns, and two hay barns at the dairy site. Vanderham began construction on or after July 29, 2005.  Vanderham has begun to construct the dairy to achieve maximum operational capacity and has constructed or is in the process of constructing, two freestall barns, two solid separation lagoons, two liquid manure storage lagoons, all planned corrals with flushed lanes, a milking barn, and feed storage facilities; these facilities compromise the dairy facility and will occupy 60 acres.

Dairy cows emit volatile organic compounds ("VOC") directly from their digestive system, which are referred to as enteric emissions.  VOC is emitted from urine and feces ("manure") from dairy cows immediately after excretion in the freestall barns, from decomposing manure in the solid separation lagoons and liquid manure storage lagoons, in corrals, and in solid manure composting piles.  Of the various compounds defined as VOC under District rules, dairy cows emit many defined VOCs, and decomposing feed also emits VOC.  The enteric emissions from cows in the freestall barns and the milking barn, emissions from decomposing feed, and emissions from decomposing manure in the manure lagoons and compost piles are non-fugitive emissions in that they can reasonably pass through a stack, chimney, vent or other functionally equivalent opening.  The freestall barns and milking barn, the liquid manure storage lagoons, the solid manure storage piles, and the feed storage unit each have the potential to emit VOC at a rate greater than 2 lbs. per day and 10 tons per year.

On December 15, 2005, AIR filed its Complaint and alleged a cause of action under citizen suit provision 42 U.S.C. § 7604(a)(1) of the CAA.  AIR alleges that Vanderham has violated District Rule 2010 and Rule 2201, which have been approved by the EPA as part of California's State Implementation Plan.  AIR alleges that Vanderham has failed to obtain an

2

ATC permit from the District (Rule 2010), has not installed BACT (District Rule 2201 § 4.1), and has not purchased emission reduction credits (District Rule 2201 § 4.5). AIR seeks declaratory and injunctive relief, the imposition of civil fines, and attorney's fees. Vanderham filed a Rule 12(b)(1) motion, which was denied by the Court. Vanderham now files this Rule 12(b)(6) motion and argues that dismissal is appropriate because the District has determined that no ATC permit is necessary, Vanderham did not own the property on which the dairy is located, and Vanderham had a vested right to construct the dairy.

In resolving the prior 12(b)(1) motion, the Court reviewed and considered a series of correspondences between Vanderham/its attorney and the District and granted Vanderham's uncontested request to take judicial notice of a December 2005 letter from the District, specifically from Samir Shelkh, Permit Service Manager, to Vanderham. The correspondences begin in July 2005, and end in December 2005. The correspondences deal with permits and herd size. In particular, the correspondences indicated that, although use permits authorized a larger herd, Vanderham would build the dairy for 1320 milk cows (plus other pertinent cattle). See Albers Declaration Exhibit C. Further, based on materials provided by the District, a 1320 milk cow herd would produce 12.4 tons of VOC per year and would fall below the District's permitting threshold.[1] The correspondences culminate in a December 2005 letter from the District. The letter reads:

Re: Permits to Operate.

Based on all the information provided to the District regarding your construction activities, the determination was made that your dairy commenced construction prior to the date that the District started requiring Authority to Construct (ATC) permits. Your dairy is therefore considered an existing operation and no ATC is required.

However, since the emissions from your dairy exceed the new permitting levels, a Permit to Operate is required for your dairy. Pursuant to District Rule 2010,

---

[1]Vanderham moves for judicial notice of the exhibits submitted as part of the prior Rule 12(b)(1) motion. AIR makes no objection to this request. A court may take judicial notice of its own records. See Fed. R. Evid. 201; United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980). Vanderham's unopposed request for judicial notice is granted. Considering judicially noticed matters of public record will not convert a Rule 12(b)(6) motion into a motion for summary judgment. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001)

Section 4.3, when an application for a Permit to Operate is filed for an existing operation, the application serves as a temporary Permit to Operate.  Therefore, since a permit application for your dairy operation was received on October 31, 2005, your application acts as a legal Permit to Operate until you have received your final Permit to Operate from the District.

Please notify the District Compliance Division at . . . when construction is completed so that your dairy can be inspected.

Thank you for your cooperation in this matter. . . .

Exhibit 1 Vanderham's Request for Judicial Notice In Support Of Rule 12(b)(1) Motion.

## DEFENDANT'S MOTION

*Defendants' Argument*

Vanderham makes three arguments in support of its motion.  First, Vanderham argues that the complaint lacks material elements necessary to bring a cause of action because it targets the wrong parties and ignores the fact that the District has already rendered a decision on the matters before the court.  The complaint alleges a violation of 42 U.S.C. § 7604(a)(1) because Vanderham did not obtain a new source review permit (an ATC permit), did not obtain emission offsets, and did not install BACT.  The complaint itself shows that the ATC permit must be issued through a new source review conducted by the District.  But, as the December 2005 letter demonstrates, Vanderham already approached the District about permits.  The District concluded that construction of the dairy began prior to the requirement of ATC permits, that no ATC permit was required, but that a permit to operate would be required prior to operation.  This decision by the District has not been challenged and is *res judicata*.  AIR has not sued the District or challenged its decision.  Since an attempt was made to obtain an ATC permit and the District is not a party, no claim is stated because no relief is available in this forum with these parties.

Second, Vanderham argues that public records show that none of the Defendants owned the property on which the dairy is located during the relevant period.[2]  The public records show

---

[2]Vanderham requests that the Court take judicial notice of two grant deeds that have been recorded with Kern County.  Judicially noticed facts often involve matters of public record, records of state entities, and proceedings in other courts, either State or Federal.  See Disabled Rights Action Committee v. Las Vegas Events,

that the dairy land was owned by several different persons/entities, and AIR has not alleged facts that tie Vanderham to these owners.  Vanderham could not violate an emission standard "if they did not own the property or build the dairy."  Defendants' Memorandum In Support Of Motion To Dismiss at 11:4-5.  In light of the public record, the complaint makes no connection between Vanderham, the property, and the construction of the dairy; no cause of action is stated.

Finally, under California law, once the last discretionary approval is granted for a project, even when other ministerial permits are to be obtained in the future, the project becomes vested and no additional requirements can be placed on it.  Building permits are the primary determinant in the analysis of whether granted public permits are sufficiently definitive and manifest all final discretionary approvals required for completion of projects.  Here, the documents submitted regarding the 12(b)(1) motion show that construction began in early 2005, but the District determined that no permit was needed in late 2005.  Thus, all approvals have been given, construction commenced, and rights vested.  No reasonable relief could be afforded under these circumstances and no claim has been stated.

*Plaintiff's Opposition*

Initially, AIR argues that Vanderham's motion is untimely and violates Rule 12(g) since it was filed after the Court ruled on the 12(b)(1) motion.

AIR further argues that 42 U.S.C. § 7604(a)(1) does not require AIR to sue the District, rather, § 7604(a)(1) permits suit against "any person," which includes Vanderham.  AIR has properly alleged violations of the EPA approved SIP, and it is the SIP that controls irrespective of conduct by the District.  Also, AIR argues that relief can be granted without the presence of the District.   Any relief granted by the Court will be premised on a finding that the CAA has been violated.  A declaration from the Court finding a violation or an injunctive relief against Vanderham would force the District to revisit its decision not to require a permit.

Inc., 375 F.3d 861, 866 n.1 (9th Cir. 2004); United States v. Southern Cal. Edison Co., 300 F.Supp.2d 964, 974 (E.D. Cal. 2004).  Considering judicially noticed matters of public record will not convert a Rule 12(b)(6) motion into a motion for summary judgment.  Lee, 250 F.3d at 688-89.  Since there is no opposition, the Court grants Vanderham's request for judicial notice of the recorded grant deeds.

5

1    Second, the complaint alleges that Vanderham built the dairy and District Rule 2010 § 3.0

2    applies to any person "building . . . any operation."  There is no language that discusses property

3    ownership and Vanderham cites no authority for the proposition that the District Rules/SIP apply

4    only to those who own the property.  Further, the correspondences submitted by Vanderham in

5    the 12(b)(1) motions, and the conditional use permit application signed by Corrie Vanderham

6    make it clear that Vanderham constructed, and intends to operate, the dairy.[3]

7    Finally, with respected to vested rights, AIR argues that the CAA trumps any California

8    law under the Supremacy Clause to the extent that there is a conflict.  Rules 2010 and 2201 were

9    made part of the SIP prior to Vanderham's construction in 2005.  Application of the vested rights

10   doctrine would conflict with California's SIP and the CAA.  Moreover, Vanderham has failed to

11   show that the vested rights doctrine would even apply to this case.  Dismissal is not appropriate.

12

13                                        **LEGAL STANDARDS**

14        **1.        F.R.C.P. 12(b)(6)**

15        Under Federal Rule of Civil Procedure 12(b)(6)**,** a claim may be dismissed because of the

16   plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6)*.*

17   This rule provides for dismissal of a claim if, as a matter of law, "it is clear that no relief could be

18   granted under any set of facts that could be proved consistent with the allegations."  Neitzke v.

19   Williams, 490 U.S. 319, 327 (1989); Parks Sch. of Business, Inc. v. Symington, 51 F.3d 1480,

20   1484 (9th Cir. 1995).  Thus, the determinative question is whether there is any set of "facts that

21   could be proved consistent with the allegations of the complaint" that would entitle plaintiff to

22   some relief.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).  In reviewing a complaint

23

24   _____

25        [3]AIR requests that the Court take judicial notice of parts of the Administrative Record in *Save Our Shafter
v. County of Kern*, which involved the Vanderham dairy.  Judicially noticed facts often involve matters of public

26   record, records of state entities, and proceedings in other courts, either State or Federal.  See Disabled Rights Action
Committee, 375 F.3d 861 at 866 n.1; Southern Cal. Edison Co., 300 F.Supp.2d at 974.  Considering judicially

27   noticed matters of public record will not convert a Rule 12(b)(6) motion into a motion for summary judgment.  Lee,
250 F.3d at 688-89.  Since there is no opposition, the Court grants AIR's request for judicial notice of parts of the

28   Administrative Record in *Save Our Shafter*, which includes a use permit application signed by Corrie Vanderham.

                                                    6

under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. <u>Newman v. Sathyavaglswaran</u>, 287 F.3d 786, 788 (9th Cir. 2002); <u>Vignolo v. Miller</u>, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court must also assume that general allegations embrace the necessary, specific facts to support the claim. <u>Smith v. Pacific Prop. and Dev. Corp.</u>, 358 F.3d 1097, 1106 (9th Cir. 2004); <u>Peloza v. Capistrano Unified Sch. Dist.</u>, 37 F.3d 517, 521 (9th Cir. 1994). But, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001); <u>see also</u> <u>Warren v. Fox Family Worldwide, Inc.</u>, 328 F.3d 1136, 1139 (9th Cir. 2003); <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981). Courts will not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." <u>Warren</u>, 328 F.3d at 1139; <u>Western Mining Council</u>, 643 F.2d at 624. Furthermore, Courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated . . . laws in ways that have not been alleged." <u>Associated General Contractors of California, Inc. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).

In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is generally limited to reviewing only the complaint, but may review materials which are properly submitted as part of the complaint and may take judicial notice of public records outside the pleadings. <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688-89 (9th Cir. 2001); <u>Campanelli v. Bockrath</u>, 100 F.3d 1476, 1479 (9th Cir. 1996); <u>MGIC Indem. Corp. v. Weisman</u>, 803 F.2d 500, 504 (9th Cir. 1986). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001); <u>Balistreri v. Pacifica Police Dep't.</u>, 901 F.2d 696, 699 (9th Cir. 1988). If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." <u>Lopez v. Smith</u>, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting <u>Doe v. United States</u>, 58 F.3d 494, 497 (9th Cir. 1995)). In other

7

1  words, leave to amend need not be granted when amendment would be futile.  Gompper v.

2  VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

3  **2.      REGULATORY FRAMEWORK**

4  *The Clean Air Act In General*

5       Congress passed the CAA to protect and to enhance the quality of air resources and to

6  promote the health, welfare, and productive capacity of the nation.  42 U.S.C. § 7401; California

7  v. United States, 215 F.3d 1005, 1007 (9th Cir. 2000).  The CAA creates a framework for the

8  "development of cooperative Federal, State, regional, and local programs to prevent and control

9  air pollution." 42 U.S.C. § 7401(a)(4); Hall v. United States Environmental Protection Agency,

10  273 F.3d 1146, 1153 (9th Cir. 2001).   The CAA requires that the EPA publish a list of air

11  pollutants and promulgate health based standards, known as the National Ambient Air Quality

12  Standards ("NAAQS"), that set the maximum permissible concentrations in the ambient air for

13  each listed air pollutant.  42 U.S.C. §§ 7408(a), 7409(a); Vigil v. Leavitt, 366 F.3d 1025, 1029

14  (9th Cir. 2004); Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n, 366 F.3d

15  692, 695 (9th Cir. 2004).  Each state has primary responsibility for assuring air quality, and the

16  CAA requires each state to adopt a State Implementation Plan ("SIP") in order to meet NAAQS

17  requirements.  42 U.S.C. §§ 7407(a), 7410(a); Vigil, 366 F.3d at 1029; Bayview Hunters Point,

18  366 F.3d at 695; Hall, 273 F.3d at 1153.  Specifically, each state is required "to adopt a 'plan

19  which provides for implementation, maintenance, and enforcement' of the ambient air quality

20  standards and to submit its SIP to the EPA for approval.  Each SIP must include enforceable

21  emission limitations and other control measures necessary to attain the NAAQS, as well as

22  timetables for compliance."  42 U.S.C. § 7410(a)(2)(A); Bayview Hunters Point, 366 F.3d at

23  695; see also Vigil, 366 F.3d at 1029.  In order to provide for federal oversight of state efforts to

24  meet NAAQS requirements, "SIPs are subject to EPA review and, if inadequate, disapproval."

25  Hall, 273 F.3d at 1153; see Bayview Hunters Point, 366 F.3d at 695.  Once a SIP is "adopted by a

26  state and approved by the EPA, [it] becomes controlling and must be carried out by the state."

27  Bayview Hunters Point, 366 F.3d at 695; Beentjes v. Placer County Air Pollution Control Dist.,

28                                              8

1   254 F.Supp.2d 1159, 1162 (E.D. Cal. 2003) ("[a SIP's] requirements and commitments become

2   binding upon the state as a matter of federal law."). "Approved SIPs are enforceable by either

3   the State, the EPA, or via citizen suits brought under [42 U.S.C. § 7604(a)]." Bayview Hunters

4   Point, 366 F.3d at 695. Regions within a state are "designated as either 'attainment' or 'non-

5   attainment' areas, depending upon whether they meet the NAAQS for a particular pollutant."

6   Council of Sacramento v. Slater, 184 F.Supp.2d 1016, 1019 (E.D. Cal. 2000). The CAA requires

7   that each SIP include a permit program for non-attainment areas to regulate the construction and

8   operation of proposed new or modified major stationary sources of pollutants. 42 U.S.C. §

9   7502(c)(5); Greenbaum v. EPA, 370 F.3d 527, 531 (6th Cir. 2004). This permitting program is

10  known as New Source Review ("NSR"). Greenbaum, 370 F.3d at 531.

11  _Citizen Suits Under The CAA_

12          Private individuals may bring a "citizen suit" to enforce provisions of the CAA and

13  approved SIP's. See 42 U.S.C. § 7604; Bayview Hunters Point, 366 F.3d at 695; Communities

14  for a Better Environment v. Cenco Ref. Co., 180 F.Supp.2d 1062 (C.D. Cal. 2001). The CAA

15  expressly authorizes citizens' suits in federal court. See Oregon Environmental Council v.

16  Oregon Dept. of Environmental Quality, 775 F.Supp. 353, 364 (D. Or. 1991). The CAA in

17  pertinent part reads:

18          (a)  Authority to bring civil action; jurisdiction. Except as provided in subsection
             (b), any person may commence a civil action on his own behalf--
19              (1) against any person (including (I) the United States, and (ii) any other
                governmental instrumentality or agency to the extent permitted by the
20              Eleventh Amendment to the Constitution) who is alleged to have violated
                (if there is evidence that the alleged violation has been repeated) or to be
21              in violation of (A) an _emission standard or limitation_[4] under this Act or

22  _____

23          [4]An "emission standard or limitation" under 42 U.S.C. § 7604 is:

24  (1) a schedule or timetable of compliance, emission limitation, standard of performance or emission standard,
    (2) a control or prohibition respecting a motor vehicle fuel or fuel additive, [or]

25  (3) any condition or requirement of a permit under part C of title I [42 USCS §§ 7470 et seq.] (relating to significant
    deterioration of air quality) or part D of title I [42 USCS §§ 7501 et seq.] (relating to nonattainment),[,] section 119

26  [42 USCS § 7419] (relating to primary nonferrous smelter orders), any condition or requirement under an applicable
    implementation plan relating to transportation control measures, air quality maintenance plans, vehicle inspection

27  and maintenance programs or vapor recovery requirements, section 211(e) and (f) [42 USCS § 7545(e), (f)] (relating
    to fuels and fuel additives), section 169A [42 USCS § 7491] (relating to visibility protection), any condition or

28                                              9

(B) an order issued by the Administrator or a State with respect to such a standard or limitation,

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this Act which is not discretionary with the Administrator, or

(3) against any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under part C of title I [42 USCS §§ 7470 et seq.] (relating to significant deterioration of air quality) or part D of title I [42 USCS §§ 7501 et seq.] (relating to nonattainment) or who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of any condition of such permit.

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an emission standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties. . . .

(b) Notice. No action may be commenced--
    (1) under subsection (a)(1)--
    (A) prior to 60 days after the plaintiff has given notice of the violation (I) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard, limitation, or order . . . .

42 USCS § 7604(a), (b)(1).

The CAA's provision for citizen suits "is meant to supplement rather than to supplant government action." Sierra Club v. Georgia Power Co., 443 F.3d 1346, 1349 (11th Cir. 2006). For citizen suits brought under § 7604(a)(1), citizen plaintiffs must give sixty (60) days notice as a mandatory condition precedent or else face dismissal of their claim. See Hallstrom v. Tillamook County, 493 U.S. 20, 31 (1989) (interpreting analogous notice requirements under RCRA); Save Our Health Org. v. Recomp of Minn., Inc., 37 F.3d 1334, 1337-38 (8th Cir. 1994); Village of Oconomowoc Lake v. Dayton Hudson Corp., 24 F.3d 962, 963 (7th Cir. 1994);

---

requirement under Title VI [42 USCS §§ 7671 et seq.] (relating to ozone protection), or any requirement under section 111 or 112 [42 USCS §§ 7411, 7412] (without regard to whether such requirement is expressed as an emission standard or otherwise);[,] or

(4) any other standard, limitation, or schedule established under any permit issued pursuant to title V [42 USCS §§ 7661 et seq.] or under any applicable State implementation plan approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations.[,] which is in effect under this Act (including a requirement applicable by reason of section 118 [42 USCS § 7418]) or under an applicable implementation plan.

42 U.S.C. § 7604(f).

Anderson v. Farmland Indus., 45 F.Supp.2d 863, 865 (D. Kan. 1999).  "The purposes of the

notice requirement are to: (a) allow the alleged violator to come into compliance with the law;

(b) provide an opportunity to negotiate a settlement of the dispute short of a lawsuit; and (c) give

state and federal environmental agencies an opportunity to step in and enforce their laws and

regulations." Cenco Ref. Co., 180 F.Supp.2d at 1086 (citing Hallstrom v. Tillamook County, 493

U.S. 20 (1989)).

**DISCUSSION**

**1.**    **Successive Rule 12(b) Motion**

Federal Rule of Civil Procedure 12(g) provides:

> If a party makes a motion under this rule but omits therefrom any defense or
> objection then available to the party which this rule permits to be raised by
> motion, the party shall not thereafter make a motion based on the defense or
> objection so omitted, except a motion as provided in subdivision (h)(2) hereof on
> any of the grounds there stated

Fed. R. Civ. Pro. 12(g).

"The philosophy underlying [Rule 12(g)] is simple and basic: a series of motions should

not be permitted because that results in delay and encourages dilatory tactics." Aetna Life Ins.

Co. v. Alla Medical Servs., Inc., 855 F.2d 1470, 1475, n.2 (9th Cir. 1988) (quoting 2A Moore et

al., Moore's Federal Practice P 12.22 at 12-192 (2d ed. 1987)).  However, not all unutilized Rule

12(b) defenses are lost if not made as part of an initial Rule 12 motion.  Rule 12(h)(2) provides:

> A defense of failure to state a claim upon which relief can be granted, a defense of
> failure to join a party indispensable under Rule 19, and an objection of failure to
> state a legal defense to a claim may be made in any pleading permitted or ordered
> under Rule 7(a), or by motion for judgment on the pleadings, or at trial on the
> merits.

Fed. R. Civ. Pro. 12(h)(2).

"Given the lack of waiver and the fact that defendant's defense[] will still require

adjudication in any event, many courts permit the defense of failure to state a claim upon which

relief can be granted to be asserted in a subsequent motion as a means of preventing unnecessary

delay in the proceedings." Coleman v. Pension Benefit Guar. Corp., 196 F.R.D. 193, 196

(D.D.C. 2000).  Where a successive Rule 12(b)(6) motion is not brought in bad faith or for

dilatory purposes, and resolution of the motion would expedite the case, a court may exercise its

discretion and relax the commands of Rule 12(g) in order to resolve the successive motion.  See

Stoffels v. SBC Communs., Inc., 430 F.Supp.2d 642, 648-49 (W.D. Tex. 2006); Hayes v.

Invigorate Int'l, Inc., 2004 U.S. Dist. LEXIS 20180, 7-9 (E.D. Pa. 2004); Coleman, 196 F.R.D. at

196-97; Fed. Express Corp. v. United States Postal Serv., 40 F. Supp. 2d 943, 948-49 (W.D.

Tenn. 1999); Thorn v. N.Y. City Dep't of Social Servs., 523 F. Supp. 1193, 1196 n.1 (S.D.N.Y.

1981) Kincaid v. City of Anchorage, 100 F. Supp. 325, 326-27 (D. Alaska 1951).

Here, Vanderham partially raised the issue of the December 2005 District letter and the

absence of the District from this lawsuit in the prior Rule 12(b)(1) motion.  In that motion, the

Court did not address these two issues because they had not been adequately raised or briefed.

However, these are obviously issues/defenses that Vanderham believes are meritorious, and the

Court does not see evidence of bad faith by Vanderham.  Moreover, Vanderham's motion has

been fully briefed by both sides.  Given the above, for this case, the Court will exercise its

discretion and resolve Vanderham's Rule 12(b)(6).[5]

## 2.    Failure To State A Claim – District Decision & Absence Of District

The complaint alleges that: (1) the freestall barns and milking barn, the liquid manure

storage lagoons, the solid manure storage piles, and the feed storage unit each have the potential

to emit VOC at a rate greater than 2 lbs. per day and the dairy itself has the potential to emit

VOC at a rate greater than 10 tons per year, see Complaint at ¶¶ 66-71; (2) that the dairy is a

"stationary source" and its constituent components are "emissions units;" see id. at ¶¶ 63-64, see

also id. at ¶¶ 50-51, 53-55; (3) that stationary sources that have the potential to emit VOC at

greater than 2lbs. per day and 10 tons per year are required to install BACT and obtain offsets,

see id. at ¶ 29; (4) that Vanderham began construction of the dairy without obtaining an ATC

permit as required by District Rule 2010 § 3.0 because the use of the dairy may cause the

issuance of air contaminants, see id. at ¶¶ 37, 39, 59, 65; (5) that Vanderham has failed to install

---

[5]Considering the language of Rule 12(g), the Court believes that relaxation of that rule should be the
exception and should not be the norm.

BACT and failed to obtain offsets as required by District Rule 2201 §§ 4.1, 4.5, see id. at ¶¶ 66-71; (6) that District Rules 2010 and 2201 are emission standards and part of the EPA- approved California SIP, see id. at ¶¶ 29-30, 58-59, 62; and (7) that Vanderham has violated and continues to violate Rules 2010 and 2201.[6]  See id. at ¶ 56.  These allegations are sufficient to allege violations of the California SIP.  See Fed. R. Civ. Pro. 8(a); 42 U.S.C. § 7604.  Since the EPA approved District Rules 2010 and 2201, see 64 Fed. Reg. 3920 (July 23, 1999); 69 Fed. Reg. 27837 (May 17, 2004); 40 C.F.R. § 52.220(c)(199)(i)(D)(6); 40 C.F.R. § 52.220(c)(311)(i)(B)(1), they are part of the California SIP.  Bayview Hunters Point, 366 F.3d at 695.  As part of California's EPA approved SIP, District Rules 2010 and 2201 "are enforceable by either the State, the EPA, or via citizen suits brought under [42 U.S.C. § 7604(a)]."  Id.  Thus, the allegations in the complaint are sufficient to state a cause of action under § 7604(a) in this Court.

With respect to the December 2005 determination that Vanderham required no ATC permit, initially, the Court does not find Vanderham's res judicata argument persuasive.  "Res judicata, or claim preclusion, bars claims that should have been raised and resolved in earlier litigation between the same parties."  Communications Telesystems Int'l v. California Pub. Util., 196 F.3d 1011, 1017-1018 (9th Cir. 1999).  "Generally, a claim is barred under this doctrine if the earlier litigation: (1) concerned the same claim as the current action, (2) reached final judgment on the merits, and (3) involved the same parties."  Id.; Nordhorn v. Ladish Co., 9 F.3d 1402, 1404 (9th Cir. 1993).  Here, the District's December 2005 letter is not res judicata: neither the letter nor the determination is "litigation," the letter is not a final judgment from "litigation," and AIR was not a party to the letter or determination.  Dismissal on the basis of res judicata is improper.

Further, neither the determination that no ATC permit was required nor the absence of the District render AIR's suit infirm or improper.  42 U.S.C. § 7604(a)(1) expressly authorizes suit against anyone who allegedly has violated or is in violation of, inter alia, an emission standard or

---

[6]Additionally, AIR provided the 60-days notice letter to Vanderham, the EPA, and the District as required by 42 U.S.C. § 7604(b).  See Complaint at ¶ 8 & Complaint's Exhibit 1.

limitation.  42 U.S.C. § 7604(a)(1).  The plain language of the statute is broad enough to cover

cases where a defendant has failed to obtain a permit (for whatever reason), and cases where a

defendant is violating a term or condition of a permit.  Cf. Wieler v. Chatham Forest Products,

392 F.3d 532, 537-39 (2d Cir. 2004) (construing 42 U.S.C. § 7406(a)(3)); Association to Protect

Hammersley, Eld, & Totten Inlets v. Taylor Res., 299 F.3d 1007, 1012 n.4 (9th Cir. 2002).[7]

Moreover, "federal and state agencies administering federal environmental laws are not necessary

parties in citizen suits to enforce the federal environmental laws."  Taylor Res., 299 F.3d at 1014

(citing inter alia Friends of Earth v. Carey, 535 F.2d 165, 173 (2d Cir. 1976) and Metropolitan.

Wash. Coalition for Clean Air v. Dist. of Columbia., 511 F.2d 809, 814-15 (D.C. Cir. 1975));

Oregon State Pub. Interest Research Group, Inc. v. Pacific Coast Seafoods Co., 341 F.Supp.2d

1170, 1179 (D. Or. 2004).

        In both Weiler and Taylor Res., a citizen suit was brought against defendants who had

been told by the appropriate permitting agency that various permits were not required.  Weiler,

392 F.3d at 534; Taylor Res., 299 F.3d at 1011.  In neither Weiler nor Taylor Res. was the

presence of the governmental agency required.  See Weiler, 392 F.3d at 357-59; Taylor Res., 299

F.3d at 1014-15.  The arguments made by Vanderham are very similar to those made by the

defendant in Taylor Res.  The plaintiff (APHETI) brought suit under 33 U.S.C. § 1365(a)(1) and

sought an injunction against defendant Taylor that would have required Taylor to stop its

activities until a permit was obtained, despite the previous determination by the state agency

(Ecology) that no permit was required.  See Taylor Res., 299 F.3d at 1009, 1011-12.  Taylor

argued that Ecology was a necessary party and that relief could not be granted without joining

that agency.  Id. at 1013-14.  In explaining that a governmental permitting agency is not a

necessary party, id. at 1014, the Ninth Circuit relied on CAA and Clean Water Act cases from

other courts and explained:

---

    [7]Because of the similarities between the Clean Water Act's, the Clean Air Act's, and the Resource
Conservation and Recovery Act's respective citizen suit provisions, cf. 33 U.S.C. § 1365 with 42 U.S.C. § 7604 with
42 U.S.C. § 6972, courts "have relied on cases interpreting the citizen suit provisions in each of these statutes to
interpret the other's citizen suit provision."  Ashoff v. City of Ukiah, 130 F.3d 409, 413 (9th Cir. 1997).

Although these cases addressed circumstances in which the citizen plaintiff was seeking to enforce the terms of an existing pollution abatement plan or NPDES permit that had been approved by the relevant agency, there is no sound reason to distinguish between the cases cited above and this case. The plain language of the Clean Water Act has created opportunity for citizen suit when government agencies do not act. We adopt the views of the Second Circuit and the District of Columbia Circuit in Clean Air Act cases where they accepted citizen suits without requiring joinder of a responsible government agency. In those Clean Air Act cases, it was the EPA that was not joined; in our Clean Water Act case, it is the delegated state agency that is not joined and that previously had determined that an NPDES permit is not required. The principle is the same: Whether a citizen is seeking to enforce the terms of an NPDES permit or a pollution abatement plan or, as here, the statutory requirements of the Clean Water Act, it is the government agency's alleged failure to act that 'brings the citizen suit into play.'

Taylor Res., 299 F.3d at 1014 (citations omitted).  Furthermore, the Ninth Circuit confirmed that governmental agencies are not necessary parties under Rule of Civil Procedure 19.[8]  The Ninth Circuit explained:

Our conclusion that Ecology is not a necessary party is supported by direct analysis of the text of Rule 19(a). We first ask, under Rule 19(a)(1), whether Ecology is a necessary party under the theory that in its absence complete relief cannot be accorded to the parties: APHETI and Taylor.  Here, the presence of Ecology will not preclude relief to either party.  If APHETI were to win, Taylor could be ordered to terminate operations unless it obtains a permit, a form of relief that is available irrespective of Ecology's participation. Ecology might grant a permit allowing further operations but, if not, Taylor would have to pull in the ropes and dock the rafts, and in either event, our relief would be complete. Conversely, if Taylor were to win, there would be no need for Ecology to congratulate it or give condolences to APHETI, and again our relief would be complete. Ecology is not needed at all for federal court relief that is wholly adequate to resolve the dispute between APHETI and Taylor.

We next ask, under Rule 19(a)(2), whether Ecology "claims an interest relating to the subject of the action" and is so situated that our decision in Ecology's absence "may ... impair or impede [that] person's ability to protect that interest" or "leave [those] already parties subject to a substantial risk of incurring double, multiple,

---

[8]Federal Rule of Civil Procedure 19 deals with "Joinder of Persons Needed for Just Adjudication" and reads in part:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. . . .

Fed. R. Civ. Pro. 19(a).

15

1
2
3

or otherwise inconsistent obligations by reason of the claimed interest." This portion of the Rule is wholly inapplicable because Ecology does not claim an interest that will be impaired by this litigation, and we see none. And Ecology's absence does not subject APHETI or Taylor to any multiple or inconsistent obligations.

4   Id. at 1014-15 (citations and notes omitted).

5       The Court does not see a meaningful distinction between *Taylor Res.* and the case at bar.

6   As explained by *Taylor Res.*, the District is not a necessary party and relief may be granted as

7   between AIR and Vanderham without the presence of the District.[9]  See id.  Despite the District's

8   determination that Vanderham required no ATC permit and the absence of the District from this

9   suit, AIR may pursue its claims under 42 U.S.C. § 7604(a)(1) for violations of the SIP (District

10   Rules 2010 and 2201) in this Court. See Bayview Hunters Point, 366 F.3d at 695; Taylor Res.,

11   299 F.3d at 1013-15.  Dismissal on this ground is inappropriate.

12       **3.      Failure To State A Claim – Defendant's Lack of Ownership**

13       The complaint alleges at several points that Vanderham constructed or is in the process of

14   constructing the dairy. See Complaint at ¶¶ 1, 6, 38. Moreover, the public records submitted by

15   AIR and the correspondences submitted by Vanderham indicate that Vanderham constructed/is

16   constructing the dairy and Vanderham applied for the various permits to construct and operate

17   the dairy. See Albers Declaration Exhibits C, D, F; Cole Declaration Exhibit 1.  The

18   correspondences between Vanderham and the District regarding air permits are by Rick

19   Vanderham himself or David Albers on behalf of Vanderham. See Albers Declaration Exhibits

20   C, D, F.  Also, the second page of Exhibit 1 of the Cole Declaration, a 1999 Conditional Use

21   Permit application from the Kern County Planning Department, identifies John Ohannsen as the

22   property owner, Corrie Vanderham as the applicant, and Richard Vanderham as the applicant's

23   personal representative. See Exhibit 1 Cole Declaration.  Corrie Vanderham's interest in the

24   property is identified as "Buyer" and under the "reason for the request" section, Corrie

25   Vanderham indicates, "I would like to build a dairy on this property."  Id.

26   _____

27       [9]Of course if AIR prevails, the Court may still take equitable concerns into consideration in fashioning
relief. See United States v. Campbell Soup Co., 1997 U.S. Dist. LEXIS 3211, *20 (E.D. Cal. 1997).

28                                                                16

Rule 2010 § 3.0 reads in relevant part, "Any person building, altering or replacing any operation . . ., the use of which may cause the issuance of air contaminants . . . shall first obtain authorization for such construction from [District]." District Rule 2010 § 3.0. The focus of the rule is on the acts of building, altering or replacing, and there is no mention of property ownership. Courts have held current defendant-owners not liable for the preconstruction permit violations of past owners because the current owner did not actually construct or modify the facility and preconstruction violations are singular violations that occur at the time of construction. See New York v. Niagara Mohawk Power Corp., 263 F.Supp.2d 650, 668-69 (W.D. N.Y. 2003). However, Plaintiff alleges that Vanderham constructed/is constructing the dairy and Vanderham cites no authority for the proposition that only the land owner on which a facility is located may be liable for violations of preconstruction permit requirements of the CAA or an applicable SIP. Given the allegations of the complaint, the public records involved, and the plain language of Rule 2010 § 3.0, there are sufficient indications that Vanderham constructed/is constructing the dairy and will be the entity that actually operates the dairy. In the absence of authority suggesting a contrary result, dismissal on this ground is denied.

### 4.    Failure To State A Claim – Vested Right To Construct The Dairy

Under California's vested rights doctrine:

> [I]f a property owner has performed substantial work and incurred substantial liabilities in good faith reliance upon a permit issued by the government, he acquires a vested right to complete construction in accordance with the terms of the permit. Once a landowner has secured a vested right the government may not, by virtue of a change in the zoning laws, prohibit construction authorized by the permit upon which he relied. . . . The vested rights doctrine protects the developer's right not only to construct, but also to use the premises as authorized by the permit.

Russ Bldg. Partnership v. City and County of San Francisco, 44 Cal. 3d 839, 845-46 (1988) (citations omitted); see also Avco Community Developers, Inc. v. Coastal Regional Com., 17 Cal.3d 785, 791 (1976). Any vested rights that an individual may have that originate from a permit are limited by the terms and conditions of the permit itself. See Russ Bld. Partnership, 44 Cal.3d at 853-54.

17

1    Here, Vanderham cites no cases dealing with vested rights and the CAA.  "The

2  Supremacy Clause . . . invalidates state laws that interfere with, or are contrary to, federal law."

3  In re Cybernetic Svcs., 252 F.3d 1039, 1045 (9th Cir. 2001).  Supremacy Clause preemption of a

4  state law may occur through express federal preemption, inferentially through a pervasive

5  scheme of federal regulation, or when an actual conflict exists, such as impossibility of

6  complying with both federal and state law or where state law "stands as an obstacle to the

7  accomplishment and execution of the full purposes and objectives of Congress."  English v.

8  General Electric, Co., 496 U.S. 72, 78-79 (1990); Pacific Legal Foundation v. State Energy

9  Resources Conservation & Dev. Com., 659 F.2d 903, 919 (9th Cir. 1981).  "Congress plainly

10  intended for the federal [CAA] and regulations promulgated thereunder to take precedence over

11  state laws and regulations."  NRDC v. EPA, 478 F.2d 875, 888 (1st Cir. 1973).  The CAA

12  specifically precludes the right of any state to "adopt or enforce any emission standard or

13  limitation which is less stringent than the standard or limitation" contained in an EPA approved

14  SIP.  42 U.S.C. § 7416; Kentucky Res. Council, Inc. v. United States EPA, 304 F.Supp.2d 920,

15  926 (W.D. Ky. 2004).  "Thus, the Constitution, the Act, and case law are clear that where federal

16  law has spoken, state law may not impose a lesser standard."  Kentucky Res. Council, 304

17  F.Supp.2d at 926.  Stated differently, "In the event of conflict with CAA, the federal statute

18  prevails."  Coalition for Clean Air, Inc. v. South Coast Air Quality Mgmt. Dist., 1999 U.S. Dist.

19  LEXIS 16106, *11 (C.D. Cal. 1999).

20    To the extent that the California vested rights doctrine through reference to a form of

21  building permit would allow a person to bypass otherwise mandatory requirements of the

22  CAA/approved SIP, that building permit would establish de facto lower emission standards than

23  those required by federal law and would frustrate the CAA.  Since Vanderham argues that the

24  California vested rights doctrine excuses it from obtaining a SIP-required ATC permit and

25  compliance with BACT and offset requirements, Vanderham's reliance on California's vested

26  rights doctrine creates conflict between the CAA and California law.  "The difficulty with this

27  view is that the Supremacy Clause of the United States Constitution says that a valid federal law

28                                                      18

1  will preempt a conflicting state law," so the state law will be "without effect, at least to the extent

2  of the conflict."  Kentucky Res. Council, 304 F.Supp.2d at 926; see also English, 496 U.S. 72,

3  78-79; In re Cybernetic Svcs., 252 F.3d at 1045; Coalition for Clean Air, 1999 U.S. Dist. LEXIS

4  16106 at *11.  California's vested rights doctrine cannot be used to bypass the CAA/an approved

5  SIP.  Dismissal on this ground is inappropriate.

6        Further, even if there is no Supremacy Clause issue, Vanderham has not shown

7  adequately that the vested rights doctrine applies.  Vanderham bases its argument on the

8  District's decision that no ATC permit was necessary and on documents that it contends show

9  that it received building permits.  The document is presumably Exhibit E to the Albers

10  Declaration.  That exhibit is a letter from a contractor with time tables and indications that

11  building permits have been approved.  The contents of the building permit are not described.

12  Since vested rights based on a permit are subject to limitations that may be contained in that

13  permit, it is not clear that any permit created a vested right for Vanderham to build and operate

14  this dairy.  Cf. Association of Irritated Residents v. Fred Schakel Dairy, 2005 U.S. Dist. LEXIS

15  36769, *54-*55 (E.D. Cal. 2005) (holding that use permit did not created vested rights where

16  permit contained condition to comply with applicable air quality laws).  Further, the vested rights

17  doctrine prevents governments from "changing the zoning laws" in order to prevent the

18  completion of a previously approved project.  See Russ Bld. Partnership, 44 Cal.3d at 845-46.

19  Here, Vanderham has directed the Court to no change in the law that would affect Vanderham or

20  this case.  Furthermore, it is unclear that reliance on the District's December 2005 letter is

21  completely appropriate since it states that Vanderham needs to obtain from the District a Permit

22  to Operate once construction is complete.  See Exhibit 1 to Vanderham's Request for Judicial

23  Notice For 12(b)(1) motion.  Accordingly, there appears to be at least one more permit to be

24  obtained.  Cf. Hermosa Beach Stop Oil Coalition v. City of Hermosa Beach, 86 Cal.App.4th 534,

25  552-53 (2001) (holding that vested rights doctrine did not apply where all discretionary permits

26  had not been obtained and noting that developer still needed to submit additional studies and

27  analysis prior to issuance of building permit).  Further, as *Taylor Res.* indicates, a determination

28                                                    19

1   that no permit is required does not insulate a defendant from a suit under 42 U.S.C. § 7604(a).

2   Vanderham has failed to show that the vested rights doctrine applies and warrants a 12(b)(6)

3   dismissal.

4   **CONCLUSION**

5           Vanderham moves for a dismissal under Rule12(b)(6) on the grounds that the District is

6   not a party and has determined that no ATC permit is required, that Vanderham was not the

7   property owner at the relevant time, and that California's vested rights doctrine allows

8   Vanderham to construct the dairy without an ATC permit, BACT or offsets.  However, as

9   discussed above state permitting agencies are not necessary parties and a defendant, even if told

10   that no permit is required by the appropriate agency, may still be subject to a 42 U.S.C. § 7604(a)

11   lawsuit.  Further, District Rule 2010 focuses on the act of building and not property ownership,

12   and Vanderham has cited no cases that indicate only property owners may violate the CAA or the

13   applicable SIP.  Since the public and court records indicate that Vanderham constructed or

14   sought to construct and then operate the dairy, and the complaint also so alleges, dismissal on

15   this ground is not appropriate.  Finally, Vanderham has not shown that the doctrine as applied to

16   this case would not run afoul of the Supremacy Clause, and, even if there is no such problem, has

17   not shown that it meets the requirements of  California's vested rights doctrine.  Construing the

18   allegations and public records in the light most favorable to AIR, 12(b)(6) dismissal is

19   inappropriate.

20           Accordingly, IT IS HEREBY ORDERED that:

21           1.       Defendants's Rule 12(b)(6) Motion To Dismiss is DENIED; and

22           2.       Defendants shall file an answer within fourteen (14) days of service of this order.

23

24   IT IS SO ORDERED.

25   **Dated:   September 13, 2006**           **_____/s/ Anthony W. Ishii_____**

26   0m8i78                         UNITED STATES DISTRICT JUDGE

27

28   20