UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ASSOCIATION OF IRRITATED RESIDENTS, an unincorporated association**<br><br>          **Plaintiff,**<br><br>     **v.**<br><br>**C&R VANDERHAM DAIRY, a California Proprietorship, and RICK VANDERHAM and CORRIE VANDERHAM, owners and operators, CORRIE VANDERHAM DAIRY, INC., a California corporation, AG RESOURCES, LLC, a California limited liability company,**<br><br>          **Defendants.** | 1:05-CV-01593 OWW SMS<br><br>**MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION TO PRECLUDE DEFENSE EXPERT GENSKE** |

**1.   INTRODUCTION**

Plaintiffs move to preclude the testimony of Gary B. Genske ("Genske"), an expert witness for Defendants C&R Vanderham Dairy, *et. al* ("Defendants" or "Vanderham"). Plaintiffs move to preclude Genske's testimony on two grounds:

1.   Genske's expert opinion lacks any basis grounded
     in the facts of the case or in the principles of
     his discipline as required by Fed. R. Ev. 702

2.   Genske failed to timely state in an expert report
     all of his expert opinions to be expressed and the

```
           expert qualifications for asserting those opinions
           as required by the Court's Scheduling Conference
           Order and Fed. R. Civ. P. 26(a)(2)(A-B)
```

### 2.  PROCEDURAL BACKGROUND

Plaintiffs filed their motion to preclude Defendants' expert testimony on June 1, 2007.  (Doc. 116.)  Defendants filed an opposition on July 9, 2007.  (Doc. 137.)  Plaintiffs replied on July 23, 2007.  (Doc. 143.)

### 3.  FACTUAL BACKGROUND

According to Defendants, Genske is a certified public accountant with twenty-six years of experience in accounting for dairies including preparation of their financial statements and tax returns.  Defendants claim that since 1981 Genske has been performing accounting tasks, including preparation of financial statements and tax returns.[1]  Defendants claim that Genske's firm performs accounting tasks for clients who produce approximately twenty percent of the milk in California, which comprises approximately four hundred dairy operations.  Defendants retained him as an economic expert in this case.

On May 14, 2007, Genske issued a letter to Defendants opining on whether Defendants experienced any economic benefit by relocating their dairy operations from Southern California to Kern County.  According to the letter, Genske opines that Vanderham did not achieve any economic benefit from its dairy operations during 2006 and the first quarter of 2007 and that

---

[1] Defendants do not provide a curriculum vitae ("CV"), resume, or any other document that explains Genske's educational or professional background.

dairies that relocate lose money following the move.

However, in his letter, Genske states that he has not seen Vanderham's financial statements for 2006 and the first quarter of 2007, and that his "evaluation has not been completed." In spite of this he states that he "doubt[s] very seriously that C&R Vanderham Dairy achieved any economic gain in 2006." He based his opinion on three premises:

1. He states that the firm's California dairy clients averaged a loss of $315,433 in 2006, supported by a chart labeled "Preliminary Draft, For Discussion Purposes Only."
2. He asserts that there are no costs associated with moving dairy operations, and states that Vanderham moved a dairy operation in 2006.
3. He speculates on the financial future of the dairy industry as a whole based on changes in the market for corn.

There is no specific factual support for any of his assertions found in the record. Genske concludes by stating that he "will await receipt of the final 2006 and possibly the first quarter of 2007 financial information before he finalizes his report."

## 4. DISCUSSION

**A. Motion to Preclude Pursuant to Fed. R. Ev. 702 Is Denied**

Under Fed. R. Ev. 702 "admission of scientific, technical, or other specialized knowledge by a qualified expert is permitted if it will assist the trier of fact to understand the evidence or to determine a fact at issue." *Mukhtar v. Cal State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002). Fed. R. Ev. 702 requires that scientific, technical, and other specialized

**3**

testimony, in order to be admitted, (1) must be based on sufficient facts or data, (2) must be the product of reliable principles and methods, and (3) the witness must have applied the principles and methods reliably to the facts of the case. FED. R. EVID. 702. The current version of the Rule implements the principles set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire v. Carmichael*, 526 U.S. 137 (1999). FED. R. EVID. 702 Advisory Committee Notes: 2000 Amendments.

*Daubert* set forth a non exclusive checklist for trial courts to use in assessing the reliability of expert testimony. The specific factors explicated by *Daubert* are:

1. whether the experts' theory can be tested;
2. whether the theory has been subject to peer review;
3. the known or potential rate of error of the theory when applied;
4. the existence of standards and controls;
5. whether the theory has been generally accepted by the scientific community;
6. Whether experts are "proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their own opinions expressly for purposes of testifying."

*Daubert*, 509 U.S. at 594 (1993); *See also*, *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 43 F.3d 1311, 1317 (9th Cir. 1995). These

factors also apply in assessing the reliability of non-scientific expert testimony. *Kumho*, 119 S. Ct. at 1175. Under *Daubert*, the Court is required to function as a gatekeeper, excluding any expert testimony that is not "based on sound science." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1316 (9th Cir.) (opinion after remand), *cert. denied*, 516 U.S. 869 (1995). In this regard, the Court's task "is to analyze not what the experts say, but what basis they have for saying it." *Id.* The Court must also fulfill this gate-keeping task with regard to non-scientific testimony, such as economic testimony. *Kumho Tire,* 526 U.S. at 148.

### i. Genske's Opinion is Not Based On Sufficient Facts or Data and Is Not the Product of Reliable Principles and Methods of Accounting

Plaintiffs argue that the court should exclude Genske's testimony because it does not satisfy any of the three requirements of Rule 702. Plaintiffs first argue that the opinion is not based on sufficient facts or data. Plaintiffs argue that Genske provides a table of net income data for an unspecified number of dairies but does not explain how or why that data applies to or is representative of Vanderham's economic benefit from moving its dairy. He opines that moving a dairy operation generally results in losses without providing evidentiary support for this conclusion. He asserts without any support that increased demand for corn from ethanol production will raise future feed costs for dairies, but does not indicate how this is related to whether Vandherham gained an economic benefit from moving its dairy in 2006. Plaintiffs argue that this is insufficient data.

Plaintiffs also argue that the Genske's testimony is not admissible because it is not the product of an application of reliable principles and methods of accounting as required under Fed. R. Ev. 702.  Plaintiffs argue that Genske's opinion of the exact economic benefits of money is derived from an example of moving a specific business, based only on survey data of the net income of his clients and a pair of unsubstantiated examples. Relying on generalized data despite the fact that he has five years of specific financial data from the dairy operation that Vanderham is moving.  Genske does not explain how this generalized data that was utilized applies or how it is representative of Vanderham's operations.  Plaintiffs argue that Genske's letter provides no foundation based on reliable principles and methods of accounting for using such generalized data to measure Vanderham's economic benefit.

Defendants do not address these assertions with any contrary evidence.  Instead Defendants contend that Plaintiffs are arguing that Defendants moved from Southern California in order to gain an economic advantage.  Defendants also assert that the attachment Genske provided with his letter shows a compilation of financial performance for their dairy clients, and should be extremely helpful to the court.  Defendants argue this establishes that Genske is "not simply pulling numbers out of a hat, but relying on actual data of actual clients in the specific industry where the Vanderhams operate."

This, effectuation does not provide a sufficiently reliable basis to gauge whether Defendants earned a profit in 2006 and the first quarter of 2007.  Defendants further argue that Genske has

**6**

not amplified his report and gave no indication when the actual historical performance of 2006 and the first quarter of 2007 financial results will be available.

Defendants claim that Genske's opinion is reliable and helpful to determine whether Defendants profited by leaving Southern California. This determination cannot be made because Genske provided no factual or industry based information to support his opinion. Defendants have not shown any reliable support for Genske's opinion. Genske does not explain how the data in the table submitted applies to Vanderham Dairy or how the table numbers relate to Vanderham's dairy operations. Genske provides no support for his assertion that moving the location of a dairy necessarily causes losses for the dairy. Genske has been unwilling to do so or to provide supplemental information.

Moreover, Defendants have violated Fed. R. Civ. P. 26(a). These failures are unexplained and unexcused. Genske admits that his report was not complete.

Plaintiffs' motion to preclude the "report" and opinions of Genske is **GRANTED** for failure to comply with the requirements of Fed. R. Civ. P. 26(a)(2) and for failure to state a final opinion supported by clearly identified admissible evidence.[2]

---

[2] Plaintiffs also argue that the report did not meet the admissibility standards of federal rule of evidence 702 because it is not reliable or relevant. The more germane inquiry is as to the correct measure of damages, the cost of compliance or, the converse of that, what the effect of non compliance with applicable air standards is on the profitability of the operations. Based on his report Genske claims to have over 30 years of experience in performing accounting services for the dairy industry. He represents clients who make up twenty percent of the California Dairy Industry. The opinion he specifically

**B.   Genske's Report Fails to meet the Discovery Requirements for an Expert Report under Fed. R. Civ. P. 26**

The Scheduling Conference Order dated May 5, 2006, directs both parties to submit expert reports "pursuant to F.R.Civ.P. Rule 26(a)(2), (A) and (B)." Scheduling Conference Order 7.  Rule 26(a)(2)(B) states, in relevant part:

> Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case..., be accompanied by a written report prepared and signed by the witness.  The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and the testimony; and a listing of any other

---

offered in the letter report on herd profitability is not applicable to the effect of the cost of compliance measure of damages.  No relevance objection was made under Fed. R. Ev. 401.  The 702 objection is denied.

Plaintiffs did not raise any *Daubert* arguments at the hearing.  It bears noting that Genske *o*ffered no testimony about applicable financial rules governing dairy operations, what factors bear on and what the costs of compliance are with clean air standards.  Nor did he offer any information about the costs of operating a dairy and how income is generated.

8

cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.  FED. R. CIV. P. 26(a)(2)(B).[3]

Genske's letter fails to comply with Fed. R. Civ. P. 26(a)(2)(B) for three reasons:

1. If it is considered a "report" at all, it does not "contain a complete statement of all opinions to be expressed and the basis and reasons therefor." FED. R. CIV. P. 26(a)(2)(B).  Genske states in the letter that he has not finalized his report or opinion; to the extent that he supplements his opinion in the future, his letter does not satisfy Rule 26(a)(2)(B) with regard to his new opinions.

2. The letter does not include a statement of "the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years." FED. R. CIV. P. 26(a)(2)(B).  Genske does not describe his education, training, and qualifications as an accountant or his professional experience, nor does he include a list of all publications he has authored.  He merely states that his "expertise in

---

[3] The Court set a deadline of March 16, 2007 for the submission of expert reports, Conference Scheduling Order (Doc. 33.) ¶ 7(E), but subsequently issued an order approving a stipulated extension of the deadline to May 15, 2007. Stipulation and Order RE: Extension of Time to Disclose Expert Reports. (Doc. 80.)

**9**

        the dairy industry is rather extensive," and asserts that his firm's dairy clients produce about 20% of California's milk.

3. The letter ostensibly provides the required information regarding compensation and prior testimony if documentation is complete. Genske's letter does not indicate "the compensation to be paid for the study and the testimony;" nor does it list "any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years." FED. R. CIV. P. Rule 26(a)(2)(B).

Vanderham has offered no Fed. R. Civ. P. or any other substantial justification for its failure to comply with Rule 26(a)(2)(B)'s requirements. Plaintiffs argue these failures cause prejudice because Plaintiffs do not know what Genske's testimony will be or on what facts and data he will rely on to express his opinions. This prevents Plaintiff from effectively conducting expert discovery and from being prepared to address Genske's opinions and underlying data at trial. Vanderham' non-compliance subjects Plaintiffs to unfair surprise: Defendants have denied AIR the opportunity to adequately prepare for or adequately take the deposition of Genske who was unwilling to meaningfully provide responsive answers about his expert opinions. AIR will be unable to prepare rebuttal reports, due on June 15, 2007. *See* Scheduling Conference Order (Doc. 33.), ¶ 7(E); FED. R. CIV. P. 26(a)(2)(C). The Genske letter expressly states that he will be altering his report in the future.

**10**

Vanderham's failure to submit a final expert report denies AIR the opportunity to depose Genske on any new information or to closely examine his final opinions.

At the August 13, 2007 hearing on this motion, Defendants requested the opportunity to designate a new expert.[4]  Plaintiffs argue that even if Vanderham submits another expert report that satisfies the requirements of Rule 26(a)(2)(B), the testimony should be excluded because the report has not been submitted by the Court-imposed deadline of May 15, 2007.  The Scheduling Conference Order, specifies:

> "Failure to designate experts in compliance with this Order may result in the court excluding the testimony or other evidence offered through such experts that are not disclosed pursuant to this Order." Scheduling Conference Order ¶ (7)(E).

Such an exclusion is within the discretion of the Court. *See, e.g., Pickern v. Pier 1 Imports* (U.S.), Inc, 457 F.3d 963, 969 (9th Cir. 2006) (holding that it is "not an abuse of discretion to exclude a party's expert testimony when that party failed to disclose the expert report by the scheduling deadline and the party reasonably could have anticipated the necessity of the witness at the time of the deadline."); *Coles v. Perry,* 217 F.R.D. 1, 4 (D.D.C. 2003) (noting that "the very purpose of the rule is nullified" when an expert "supplements his report by

---

[4] A request by Defendants to designate a new expert would entail re-opening discovery.  An oral request in open court to re-open discovery cannot serve as a motion.  Any such request must be made by a properly noticed motion.

**11**

addressing a new matter after discovery has ended); *North American Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447 (9th Cir. 1986) (belated compliance with discovery orders does not preclude imposition of sanctions).

Defendants rejoin that Genske's opinion is reliable based on his expertise and financial experience with the Dairy industry. Plaintiffs argue that they have attempted to elicit the missing and incomplete information from Genske during his deposition and he was unwilling to do so. Vanderham has failed to provide the required expert disclosure despite extensive deposition questioning and a subpoena duces tecum requesting it.[5] Vanderham's failure to comply with the requirements of Rule 26(a)(2)(B) threatens Plaintiffs with unfair surprise at a later stage in this case and prevents them from adequately preparing for depositions and trial.

Plaintiffs' motion to preclude Genske's testimony for failure to comply with Fed. R. Civ. P. 26(a)(2)(B) is **GRANTED**.

//
//

---

[5] Plaintiffs argue that Vanderham did not provide the underlying data for the table attached to Genske's letter. Plaintiffs also claim that at his deposition, Genske refused to produce any documents responding to a subpoena duces tecum requesting production of any and all documents listing all of his firm's dairy clients. Further, when asked when he would be producing the underlying data for the table attached to his opinion, he indicated that he would not provide that information because it was proprietary. Lastly, Plaintiffs claim that when AIR's counsel specifically tried to determine if Genske used data from dairies of similar location, size, structure, or emissions to the Dairy, Genseke refused to even disclose if the comparable dairies were his clients.

### 5. <u>CONCLUSION</u>

For all the reasons stated above, the testimony of Gary B. Genske is excluded for failure to comply with Fed. R. Ev. 702 and Fed. R. Civ. P. 26(a)(2)(B).

IT IS SO ORDERED.

**Dated:   August 27, 2007**                    **/s/ Oliver W. Wanger**
                                                UNITED STATES DISTRICT JUDGE